Diana Rhodes, WY #5-2734
Traci Rivinus, WY #6-3920
Rhodes Law Firm, LLC
2015 Warren Avenue
Cheyenne, WY  82001
Telephone: 307.634.4444
Facsimile:  307.220-0280

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 OCT 17  PM 3: 18

STEPHAN HARRIS, CLERK
CHEYENNE

## UNITED STATES DISTRICT COURT
### for the
### DISTRICT OF WYOMING

| | |
|---|---|
| **SUSAN FEINMAN, appointed Personal Representative for the Estate of LILLIE PAULINE WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **vs.** ) | **Civil Doc. No.**  17-CV - 175 - ℮ |
| ) | |
| **SSC CHEYENNE  OPERATING COMPANY, LLC, a Foreign Limited Liability Company, d/b/a CHEYENNE HEALTHCARE CENTER.; SAVASENIORCARE ADMINISTRATIVE SERVICES, a Foreign Limited Liability Company; SAVASENIORCARE CONSULTING LLC, a Foreign Limited Liability Company; SAVA SENIOR CARE, LLC, a Foreign Limited Liability Company,** ) ) ) ) ) ) ) ) ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff, Susan Feinman, Esq., Wrongful Death Representative for the Estate of Lillie P.

Williams, deceased, by and through counsel, Diana Rhodes, Rhodes Law Firm, LLC,  for claims

for relief as a wrongful death action against Defendants SSC Cheyenne Operating Company, LLC,

d/b/a Cheyenne Healthcare Center; SavaSeniorCare Administrative Services; SavaSeniorCare

Consulting LLC, and SavaSeniorCare, LLC, hereinafter referred to as "Defendants

SavaSeniorCare", states and alleges upon information and belief as follows:

1.      At all times relevant to the facts alleged in this Complaint, decedent, Lillie Williams, was a resident of Laramie County, Cheyenne, Wyoming.

2.      At all relevant times, Lillie Williams was a resident of Cheyenne Healthcare Center [hereinafter "CHCC"], and suffered injuries while a resident of CHCC.

3.      Susan Feinman, Esq., is appointed Wrongful Death Representative for the Estate of Lillie P. Williams, deceased, pursuant to an Order of the First Judicial District Court, Laramie County, Wyoming, dated June 27, 2017, under Civil Action Number 188-097, attached as **Exhibit 1**. She brings this negligence action in her official capacity on behalf of all participating beneficiaries of Lillie Williams, deceased. The decedent was, and her probate estate and the Personal Representative of her probate estate are, Wyoming citizens.

4.      Plaintiff is informed and believes and thereon alleges, that defendant SavaSeniorCare Administrative Services, LLC, is a for-profit limited liability company organized and existing under the laws of the state of Delaware.  Upon information and belief, SavaSeniorCare Administrative Services, L.C.C., is the administrative unit and management of SavaSeniorCare, L.L.C. and is engaged in, among other things, oversight, management, human resources, advertising, marketing, hiring, accounting, IT, compliance, legal and risk management functions, accounting services, accounts payable, accounts receivable, payroll benefits, and purchasing, direction and operation of nursing home facilities, including but not limited to Cheyenne HealthCare Center, located at 2700 E 12th St, Cheyenne, WY 82001.

5.      Upon information and belief, SavaSeniorCare, LLC is the sole member of SavaSeniorCare Administrative Services, LLC and is organized and existing under the laws of the State of Delaware.  With its affiliated and/or subsidiary companies, SavaSeniorCare, LLC is

engaged in the oversight, direction, and operation of nursing home facilities, including but not limited to Cheyenne HealthCare Center, located at 2700 E 12th St, Cheyenne, WY 82001.

6.      Defendant SavaSeniorCare Consulting, LLC is a for-profit limited liability company organized and existing under the laws of the state of Delaware.

7.      Plaintiff is informed and believes, and thereon alleges, that defendant Cheyenne Operating Company, LLC, is a for-profit limited liability company organized and existing under the laws of the state of Delaware.   Upon information and belief, SSC Cheyenne Operating Company, LLC, along with the other corporate defendants, are doing business as owners, operators, or managers of Cheyenne HealthCare Center.

8.      Defendant John Doe Management Company is a business and may have had ownership, oversight and/or management responsibilities over Defendants' facility as Cheyenne Health Care Center.

9.      Plaintiff is informed and believes, and based thereon allege, that at all times herein mentioned, each of the defendants was the agent, partner, joint venturer, aider and abetter, alter ego, and/or employee of each of the remaining defendants, and was acting within the course and scope of such agency, partnership, joint venture, and/or employment or in the capacity of an aider and abetter or alter ego.

10.     At all times relevant herein, agents, employees, servants, and apparent agents of the Defendants acted on behalf of themselves and on behalf of SavaSeniorCare, LLC, SavaSeniorCare Consulting, LLC, SavaSeniorCare Administrative Services, LLC, SSC Cheyenne Operating Company LLC/ d/b/a Cheyenne HealthCare Center, LLC, hereinafter referred to as "Defendants SavaSeniorCare," and/or their parent companies.

11.     The events giving rise to this action occurred in Laramie County, Wyoming.

12.     The amount in controversy in this action, exclusive of costs and interest, exceeds seventy-five thousand dollars ($75,000).

13.     A Notice of Claim was properly and timely executed to the Medical Review Panel of the State of Wyoming, pursuant to Wyo. Stat. § 9-2-1519. Defendants responded on September 18, 2017, stating a Dispute Resolution Program was in place and that pursuant to W.S .§9-2-1518(a), the panel does not review claims subject to a valid arbitration agreement. The Order of Dismissal was entered by the Medical Review Panel on September 19, 2017, and is attached as **Exhibit 2**. Pursuant to the Medical Review Panel Act, the Order of Dismissal provided Plaintiff with the availability of legal action, and this Court has jurisdiction.

14.     Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. §1332 (a)(1) and (2) and 28 U.S.C. § 1391(a).

15.     At all times material to this action, Defendants SavaSeniorCare were engaged in the business of for-profit custodial care of elderly and infirm nursing home residents and were the parent corporations and alter ego of SSC Cheyenne Operating Company, LLC, d/b/a Cheyenne HealthCare Center, LLC ( CHCC). As a consequence, Defendants SavaSeniorCare are responsible for any liability and damages that flow from the misconduct of the other defendants as well as being directly liable for its own independent misconduct. Defendants SavaSeniorCare, through its employees and officers, as well as its subsidiary corporations, controlled the operation, planning, management, and quality control of the nursing facility.

16.     Defendants SavaSeniorCare controlled the operation, planning, management, and quality control of CHCC. This includes, but is not limited to, control of marketing, human resources management, training, staffing, creation and implementation of all policy and procedures used by the nursing home facility, federal and state Medicare and Medicaid reimbursement, quality

care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies.

17.     Defendants SavaSeniorCare, by holding themselves out as providers and administrators of such skilled services to the public, were at all times relevant hereto, responsible for providing high quality nursing, attendant care and rehabilitative services to their patients consistent with their health and safety requirement and needs for protection and with state and federal Medicaid nursing home statutes and regulations, as well as the common law standards of due care for nursing, rehabilitative and attendant care.

18.     Defendants are sued both directly for the negligent actions of the corporation and/or management, and vicariously, on theories of principal-agent, for the actions and omissions of their employees and agents who were involved in the hereafter complained of series of negligently neglectful and careless incidents.

19.     At all times relevant hereto aides, orderlies, nurses, attendants and other nursing home staff of Defendants SavaSeniorCare who failed to provide or secure safe and appropriate nursing and other care, including necessary protective care, supervision, monitoring, and working and properly placed/located warning systems and devices, health and safety needs, adequate risk assessments, evaluations, diagnoses and other treatments to Lillie Williams were acting within the course and scope of their employment and/or agency with these Defendants.

20.     Defendants' corporations, and each of them, are also sued directly for their negligence, including but not limited to, supervision of staff, for inadequate and negligent staffing, for inadequate staff training with respect to the monitoring, supervision, hands-on or standby assistance, safety, and protection for vulnerable patients such as the decedent, and for their failure to develop, implement, modify or otherwise assure appropriate individual care plans, policies and

procedures necessary for the health, care, dignity, protection and safety of patients such as Lillie Williams, all of which actions and omissions have now resulted in the injuries of Lillie Williams as complained of herein.

21.     The Defendants owed to Lillie Williams and the other residents a fiduciary duty to use their best efforts and to provide adequate resources to CHCC, so Lillie Williams and the other residents had adequate care.  Lillie Williams, like the other residents of CHCC, was frail and dependent upon CHCC to care for her needs.

22.     Defendants SavaSeniorCare owed to Lillie Williams a nondelegable duty to provide reasonable and appropriate nursing and nursing home care.

23.     During Lillie Williams's residency at CHCC, defendants SSC Cheyenne Operating Company, LLC, d/b/a Cheyenne Healthcare Center; SavaSeniorCare Administrative Services,; SavaSeniorCare Consulting LLC, And SavaSeniorCare, LLC, John Doe Corporation, and each of them, had a duty, under applicable federal and state laws (which were designed for the protection and benefit of residents such as Lillie Williams) to provide for, and to protect, Lillie Williams's health and welfare.  Defendants, and each of them, also had a common law duty to provide for the health and welfare of Lillie Williams.  Defendants had, among other duties, the duty with respect to Lillie Williams's health and welfare to:

   a.  Protect Lillie Williams from sustaining injuries to her person;

   b.  Perform adequate and comprehensive assessments of Lillie Williams;

   c.  Properly document nursing notes;

   d.  Monitor and accurately assess and record Lillie Williams's condition, and notify the attending physician and family members of any meaningful change in her condition in a timely manner;

e.  Establish and implement a patient care plan for Lillie Williams based upon, and including, an ongoing process of identifying her health care needs and making sure that such needs were timely met;

f.  Accurately monitor and provide for Lillie Williams's health, comfort, and safety;

g.  Maintain accurate records of Lillie Williams's health, comfort and safety;

h.  Provide Lillie Williams with appropriate medical and nursing care;

i.  Maintain trained, qualified, and licensed nursing and other staffing at levels adequate to meet Lillie Williams's needs;

j.  Provide sufficient supervision to Lillie Williams, a vulnerable resident, to ensure her safety;

k.  Take all preventative measures known for high fall risk;

l.  Take all preventative measures known for pressure sores;

m.  Provide adequate nutrition and hydration;

n.  Provide proper Activities of Daily Living.

24.  Lillie Williams's injuries were proximately caused by the negligence and other misconduct of the Defendants SavaSeniorCare, in the following particulars:

a.  Failure to provide sufficient staff and personnel to attend to the reasonable needs of the residents of its nursing home operated under the business style of "Cheyenne HeathCare Center, LLC."

b.  Failure to provide proper and appropriate training for personnel to attend to the reasonable needs of the residents of its nursing home operated under the business style of "Cheyenne HeathCare Center, LLC."

c.      Failure to provide proper and appropriate supervision and monitoring of personnel who attend to the reasonable needs of the residents of its nursing home operated under the business style of "Cheyenne HeathCare Center, LLC."

d.      Failure to maintain and protect the physical safety of its residents, including Lillie Williams.

e.      Failure to develop and implement a comprehensive care plan to meet Ms. Williams' needs.

f.      Failure to protect frail, vulnerable persons.

g.      Failure to keep residents safe and free from avoidable accidents.

h.      Failure to properly and appropriately manage monies.

i.      Failure to timely notify Physician and/or family of change in condition of Lillie Williams.

j.      Failure to inquire about placing a new PEG tube in a timely manner, and failure to have PEG tube placed in a timely manner.

k.      Failure to provide adequate nutrition to Ms. Williams, including making sure PEG tube did not come out.

l.      Failure to supervise its management, including but not limited to, the Administrator and Director of Nursing.

m.      Failure to develop and implement an appropriate plan of care to prevent Ms. Williams from falling, including, take all preventive measures known for high fall risk.

n.      Failure to adequately assess and prevent Ms. Williams from developing avoidable pressure sores, including that Ms. Williams needed to be on a frequent turning and repositioning program.

o.      Failure to adequately assess Ms. Williams' needs.

p.      Failure to properly document;

q.      Failure to provide proper safety measures for its residents.

r.      Failure to prevent, identify and treat pressure sores;

s.      Failure to prevent and treat wound infections;

t.      Failure to prevent and control high blood pressure;

u.      Failure to notify Ms. Williams' family of alternate forms of nutrition;

v.      Failure to provide adequate nutrition and hydration to Ms. Williams;

w.      Failure to develop, implement, and update care plans;

x.      Failure to maintain proper clinical records;

y.      Failure to follow policies and procedures.

z.      Failure to provide quality of care.

25.     As a result of said defendants' conduct, as alleged above, Lillie Williams suffered the following damages for which plaintiff is seeking compensation:

a.      Personal injuries, including, but not limited to, pressure sores, wound infections, high blood pressure, malnutrition and dehydration, all to her damage, and a substantial factor in her death;

b.      Loss of dignity and loss of enjoyment of life;

c.      Loss of care, comfort and society of the heirs of Lillie Williams;

d.      General and special damages in an amount that will be proven at trial.

## STATEMENT OF FACTS

26.     Plaintiff incorporates paragraphs 1 – 25 and makes the same a part hereof as if fully set forth herein.

27.     On March 14, 2015, Lillie Williams became a resident of Defendants' Cheyenne HealthCare Center (CHCC) nursing home with a history of recent falls.

28.     Upon admission to Cheyenne Healthcare Center (CHCC), Ms. Williams was determined to be high risk for falling, high risk for pressure sores, and she had high blood pressure, among other things.

29.     At the time of admission to CHCC, Ms. Williams had a percutaneous gastric tube (PEG tube) to provide a means for feeding.

30.     Upon admission to CHCC, it was noted Ms. Williams was not able to ambulate, to be non-weight bearing, to transfer via Hoyer lift, and required assistance of two (2) people for bed mobility and bathing; and, locomotion required assistance of one (1) person.

31.     On March 16, 2015, the CHCC transfer care plan was initiated, with no indication of the type of mechanical lift to be used for transfer, and no indication of which services required one or two person assists.

32.     According to the medical records, Ms. Williams had difficulty communicating.  At times, she could not vocalize at all and could only nod or shake her head.

33.     Ms. Williams was identified by CHCC as a high fall risk.

34.     Although Ms. Williams was a high fall risk, CHCC's interim plan of care did not identify falls as a problem.

35.     On March 18, 2015, at or about 1:15 am, Ms. Williams suffered an unwitnessed fall. After the fall, a fall care plan was created.

36.     The fall care plan included undated added interventions as well as a perimeter mattress be put in place.

37.     Ms. Williams fell a second time on March 18, 2015 at or about 7:20 am.

38.     In the post-fall assessment of Ms. Williams' second fall, there was no documentation about bed height or perimeter mats being on the floor beside the bed.

39.     In the March 18, 2015 fall report, it was documented that medications Ms. Williams was receiving could not have been contributing factors to the fall, when the medications she was receiving did create a fall risk.

40.     On or about April 10, 2015 to April 11, 2015, Ms. Williams was admitted to Cheyenne Regional Medical Center (CRMC) Intensive Care Unit for a dislodged PEG tube and significant abdominal infection.

41.     At CRMC, Ms. Williams had multiple surgeries to remove the damaged/infected tissue from the wound, the last surgery was on April 28, 2015.  According to CRMC medical records, Ms. Williams was noted to have skin breakage to multiple areas of her body.

42.     The next day, on April 29, 2015, Ms. Williams was readmitted to the CHCC nursing home.

43.     Ms. Williams suffered from avoidable pressure sores.

44.     CHCC staff failed to timely and adequately assess, update the plan of care, or to implement an appropriate plan of care, to identify, prevent, and treat pressure sores.

45.     There is no documentation by CHCC of consistent head to toe skin assessments.

46.     CHCC staff failed to identify, assess and document a pressure sore later identified by staff at Cheyenne Regional Medical Center on July 2, 2015.

47.     CHCC's plan of care was not updated as Ms. Williams' new pressure sores developed and current sores worsened.

48.     According to CHCC's medical records, Ms. Williams' wounds were not adequately described.

49.     According to the CHCC medical records, there is a lack of adequate wound care documentation on the Treatment Administration Record (TAR).

50.     According to the CHCC medical records, nursing staff failed to document infection of Ms. Williams' wounds, and failed to implement preventive measures to keep the wounds clean, dry, and free of further harm from scratching.

51.     According to the CHCC medical records, there is a lack of documentation of consistent complete head to toe skin assessments of Ms. Williams.

52.     Ms. Williams' was a high risk for pressure sores and required frequent repositioning.  A nursing note stated Ms. Williams was repositioned occasionally.

53.     According to the CHCC medical records, consistent complete Braden skin assessments were not documented.

54.     According to the CHCC medical records, consistent and adequate wound care to prevent and treat pressure sores for Ms. Williams was not documented.

55.     On June 5, 2015, the dietician at CHCC noted that intravenous hydration would be considered due to Ms. Williams' decreased oral intake and hydration, but this was not further addressed.

56.     By June 30, 2015, Ms. Williams was noted to have a 13 pound weight loss in 10 day period.

57.     CHCC discussed placement of a PEG tube with the family on June 30, 2015. CHCC staff arranged the PEG tube placement to occur on July 16, 2015.

58.     When Ms. Williams was admitted to CRMC on July 2, 2015, it was noted she had not eaten in five (5) days.

JULY 2, 2015 ADMISSION TO CRMC

59.     On July 2, 2015, at approximately 6:00 PM Ms. Williams was transferred to the emergency room at Cheyenne Regional Medical Center (CRMC).

60.     The CHCC nursing home record showed no nursing assessment related to the reason for the transfer to CRMC on July 2, 2015.

61.     According to the CRMC medical records of the July 2, 2015 admission, Ms. Williams was treated for dehydration and was diagnosed with acute kidney injury.

62.     CRMC medical records on July 2, 2015 state Ms. Williams was found to have not eaten in five days.

63.     CRMC medical records on July 2, 2015 state Ms. Williams had an unstageable left heel pressure sore with dry, black eschar.

64.     CRMC medical records on July 2, 2015 state Ms. Williams had pressure sores on various areas of her body.

65.     CRMC medical records on July 2, 2015 state Ms. Williams had an open area on her body with drainage. The drainage from the wound was not assessed or documented by the staff at the CHCC nursing home facility.

66.    CRMC medical records on July 2, 2015 state Ms. Williams had food and medication caked in her mouth, which had to be moistened and suctioned out.

67.    The CRMC ER records on July 2, 2015 state the last Catapres blood pressure patch cover placed was dated June 25, 2015. According to the CHCC nursing home facility records, a Catapres patch was placed on Ms. Williams on July 1, 2015.

68.    CRMC medical records on July 2, 2015 state that upon admission, Ms. Williams' Catapres (blood pressure) patch was missing. A note at 6:52 PM, revealed Ms. Williams' blood pressure was 210/129.

69.    On July 3, 2015, a social worker at CRMC contacted Adult Protective Services to make a report about possible neglect concerning Ms. Williams' care and treatment at CHCC.

70.    Ms. Williams remained at CRMC until her transfer to Davis Hospice Center on July 10, 2015, where she remained until her death on July 23, 2015.

## OTHER RELEVANT FACTS

71.    The death of Ms. Williams was caused by dehydration, malnutrition, and hypertensive encephalopathy, related to neglect at the skilled nursing facility.

72.    Defendants SavaSeniorCare had a duty to transfer a resident that requires care beyond the resources and/or capabilities of the facility and its staff.

73.    Defendants SavaSeniorCare did not have adequate resources and/or trained staff to meet the needs of Ms. Williams' and her care.

74.    At all relevant times, Defendants SavaSeniorCare held a fiduciary position of trust toward Lillie Williams, and toward her family, and owed to her the highest duties of good care, adequate staffing, proper physical protection, candor and truthfulness.

75.     Defendants SavaSeniorCare breached and violated its duties toward Lillie Williams, and did so with knowledge and forethought and purpose, for the sake of enhancing its corporate profits and pecuniary gain.

76.     The negligence, inattention, and misconduct of Defendants SavaSeniorCare were committed as part of a pattern of wrongdoing on the part of the corporate Defendant.

77.     Lillie Williams was injured and damaged as a result of the misconduct of Defendants SavaSeniorCare.

78.     At all relevant times, Defendant SavaSeniorCare Administrative Services, LLC had a duty to properly manage the facility of CHCC in all manners as it relates to the care treatment of the frail, vulnerable population of residents assigned to their care.

79.     Defendant SavaSeniorCare breached and violated its duties toward Lillie Williams and toward her family, and did so with knowledge and forethought and purpose.

80.     The negligence, inattention, and misconduct of Defendant SavaSeniorCare Administrative Services, LLC were committed as part of a pattern of wrongdoing on the part of the management company.

81.     Lillie Williams was injured and damaged as a result of the negligence, misconduct, fraud, of Defendants SavaSeniorCare.  The injuries and damages were a substantial factor in the death of Ms. Williams.

### FIRST CAUSE OF ACTION
### (Negligence of All Defendants)

82.     Plaintiff incorporates all preceding paragraphs in their entirety and makes the same a part hereof as if fully set forth herein.

83.     Susan Feinman, as Personal Representative of the Estate, brings this action against Defendants pursuant to the provisions of the Wyo. Stat. Ann §§ 1-38-101, et seq.

84.     Defendant CHCC, at all times pertinent hereto, was a nursing home licensed in the State of Wyoming.

85.     Defendants SavaSeniorCare, all times pertinent hereto, were the owners and/or operators of SSC Cheyenne Operating Company, LLC and CHCC.

86.     Defendants SavaSeniorCare at all times pertinent hereto, may have had responsibilities for the management and operation of CHCC.

87.     Defendants held themselves out to be specialists in the field of nursing home care with the expertise to maintain the health and safety of persons unable to care for themselves, such as Lillie Williams.

88.     As Lillie Williams was a paying resident of CHCC.  Defendant SSC Cheyenne Operating Company, LLC, d/b/a CHCC, Defendant SavaSeniorCare Administrative Services, LLC, Defendant SavaSeniorCare Consulting LLC, and SavaSenorCare LLC, and John Doe Corporation, by and through their employees, had contractual and other duties to provide competent nursing and other care to Lillie Williams as required by law and consistent with community standards.

89.     Defendants were negligent and substandard in at least, but not limited to, the following particulars:

        a.  Defendants failed to maintain and protect the physical safety of its residents, including Lillie Williams

        b.  Defendants failed to notify Physician and/or family of Changes, pursuant to §483.10(b)(11);

c.  Defendants failed to provide adequate supervision and assistance to prevent accidents, including but not limited to, taking all preventive measures known for high fall risk, pursuant to 42 C.F.R. §483.25(h)(2);

d.  Defendants failed to develop and implement a comprehensive care plan to include measureable objectives and outcomes to meet Ms. Williams' needs based on a comprehensive assessment.  42 C.F.R. §483.20(k);

e.  Defendants failed to develop and implement an appropriate plan of care to prevent Ms. William from falling. 42 C.F.R. §483.20;

f.  Defendants failed to perform comprehensive and accurate assessments of Ms. Williams needs, pursuant to 42 C.F.R. §483.20(g), §483.20(b)(1).

g.  Defendants failed to give Ms. Williams care that met professional standards of quality to prevent her from having negative healthcare consequences.  42 C.F.R. §483.25, 483.20(k)(3)(i);

h.  Defendants failed to maintain clinical records on Ms. Williams that are complete, accurately documented, readily accessible and systematically organized, including, but not limited to, accurately documenting nursing notes, pursuant to 42 C.F.R. §483.75(l)(1).

i.  Defendants failed to assess and prevent Ms. Williams from developing avoidable pressure sores. 42 C.F.R. §483.25(c).

j.  Defendants failed to accurately assess and identify a pressure sore early in development, including but not limited to, failure to consistently complete head to toe skin assessments, failure to consistently complete Braden skin assessments,

and failure to recognize Ms. Williams had a black dry necrotic pressure sore to her heel, pursuant to 42 C.F.R. §483.25(c).

k.  Defendants failed to assess that Ms. Williams needed to be on a turning and repositioning program and failed to frequently turn and reposition her, pursuant to 42 C.F.R. §483.25(c).

l.  Defendants failed to adequately treat Ms. Williams pressure sores, including but not limited to, failure to fully describe wounds at the time they developed, and failure to provide adequate wound care, pursuant to 42 C.F.R. §483.25(c).

m.  Defendants failed to provide adequate nutrition to Ms. Williams, pursuant to 42 C.F.R. §483.25(i)(1)(2).

n.  Defendants failed to give care and treatment to make sure the PEG tube did not come out, pursuant to 42 C.F.R. §483.25(i)(1)(2).

o.  Defendants failed to inquire about placing a new PEG tube in a timely manner, and failed to schedule the PEG tube placed in a timely manner. 42 C.F.R. §483.25(i)(1)(2)

p.  Defendants failed to prevent and treat wound infections;

q.  Defendants failed to prevent and control high blood pressure;

r.  Defendants failed to notify Ms. Williams' family of alternate forms of nutrition;

s.  Defendants failed to hire adequate numbers of appropriately trained and qualified staff, pursuant to 42 C.F.R. § 483.30

t.  Defendants failed to adequately train and supervise the staff. 42 C.F.R. §483.20 and § 483.30;

u.  Defendants failed to follow policies and procedures.

v.  Defendants failed to provide proper supervision and monitoring of staff, 42 C.F.R. §483.75;

w.  Defendants failed to provide quality of care, pursuant to 42 CFR § 483.25 ;

x.  In failing to protect frail, vulnerable persons, pursuant to 42 C.F.R. §483.25(h);

y.  In failing to properly manage monies;

z.  In failing to supervise its management, including but not limited to, the Administrator and Director of Nursing.

aa. Defendants failed to meet the physical and psychosocial needs of their residents, including Ms. Williams.

90.   As a direct and proximate result of Defendants' breach of their duties, Lillie Williams suffered injuries, including but not limited to dehydration, avoidable falls, pressure sores, wound infections, malnutrition, uncontrolled high blood pressure.  The injuries were a substantial factor in causing Ms. Williams' death.

91.   At all times pertinent hereto, Lillie Williams was unable to care for herself and was under the exclusive control and care of Defendants.

92.   Defendants SavaSeniorCare, and CHCC breached and violated its duties toward Lillie Williams and toward her family, and did so with knowledge and forethought and purpose, for the sake of enhancing its corporate profits and pecuniary gain.

93.   The direct actions and omissions of the Defendants and their agents and employees acting within the scope of their agency and employment, as set forth above, also constituted a negligent breach of their duties of due care owed to Ms. Williams to provide reasonably appropriate and high quality nursing, attendant, and other care, as well as the appropriate

supervision and services necessary to meet her needs and assure her known safety needs for close supervision, monitoring, physical safety and protection are met.

94.     As a direct and proximate result of the above-mentioned conduct, all of which was negligent and substandard, Ms. Williams suffered injuries and death.

95.     Plaintiff seeks recovery for damages caused by the direct negligence of Defendants, as well as the negligence of their agents, servants and employees, including, but not limited to, all damages allowable for the wrongful death of Ms. Williams.

**WHEREFORE,** Plaintiff requests that judgment be entered in her favor and against Defendant SavaSeniorCare LLC, Defendant SavaSeniorCare Consulting LLC, Defendant SavaSeniorCare Administrative Services, LLC, Defendant SSC Cheyenne Operating Company, LLC d/b/a Cheyenne HealthCare Center, and John Doe Corporation for damages in such amount as the trier of fact determines to be just and proper, for Defendants' said misconduct and to dissuade them and others similarly situated from engaging in similar misconduct in the future; for costs of this action; and for pre- and post-judgment interest, costs, attorney fees, expert witness fees and such other and further relief as this Court deems just and proper in these circumstances.

DATED this 17th day of October, 2017.

SUSAN FEINMAN, appointed Wrongful Death
Representative of the Estate of LILLIE
WILLIAMS, Deceased,

Diana Rhodes, Esq.   #5-2734
Rhodes Law Firm, LLC
2015 Warren Ave.
Cheyenne, WY  82001
(307) 634-4444
diana@drhodeslaw.com

Diana Rhodes, WY Bar #5-2734
Rhodes Law Firm, LLC
2015 Warren Ave.
Cheyenne, WY 82001
(307) 634-4444
Fax: (307) 222-0280

FIRST JUDICIAL DISTRICT COURT

DISTRICT OF WYOMING

**FILED**

**JUN 27 2017**

DIANE SANCHEZ
CLERK OF THE DISTRICT COURT

IN THE MATTER OF THE WRONGFUL        )
DEATH OF LILLIE P. WILLIAMS, DECEASED )   Civil Action No. 188-097

### ORDER APPROVING

### WRONGFUL DEATH REPRESENTATIVE

This matter having come before the Court on the Petition of Susan Feinman, Esq. to be

appointed the Wrongful Death Representative on the above styled matter, and the Court being

otherwise fully advised and for good cause appearing:

IT IS HEREBY ORDERED that Susan Feinman, Esq. is appointed as the Wrongful

Death Representative in the matter of the Wrongful Death of Lillie P. Williams for the purpose

of pursuing a wrongful death action.

DATED this 26 day of June, 2017.

_____
DISTRICT COURT JUDGE

Clerk of District Court certifies copies were
distributed on 6-27-17 to:
D. Rhodes . M

STATE OF WYOMING COUNTY OF LARAMIE, SS CHEYENNE
I Diane Sanchez, Clerk of the District Court in and for the
County of Laramie, Wyoming, do hereby certify that the within and
foregoing is a full, true and correct copy of the original thereof as
the same appears on file or of record in my office and that the
same is in full force and effect as of this date.
Witness my hand and seal of said court this 21 day of Jun 2017
Diane Sanchez
Clerk of District Court
By _____

**EXHIBIT**
1

BEFORE THE MEDICAL REVIEW PANEL
OF THE STATE OF WYOMING

IN THE MATTER OF THE CLAIM OF )
LILLIE PAULINE WILLIAMS, )
)
        Claimant, )
)
v. )    MRP 17-17
)
SAVA SENIOR CARE, LLC; )
SSC CHEYENNE OPERATING )
COMPANY, LLC; d/b/a )
CHEYENNE HEALTH CARE CENTER )
)
        Respondent. )

*Sept. 19, 2017*

### ORDER OF DISMISSAL

Notice of the claim of Lillie Pauline Williams was filed with the Medical Review Panel on July 3, 2017. Notice of the claim was served upon Cheyenne Health Care Center on July 5, 2017 and upon Sava Senior Care, LLC on July 11, 2017. Answers were due from the Health Care Providers on September 11, 2017.

On September 18, 2017, the Medical Review Panel received a response from Health Care Providers stating that a Dispute Resolution Program was in place between the parties. Pursuant to W.S. § 9-2-1518(a), the panel does not review claims subject to a valid arbitration agreement.

The Director, pursuant to W.S. § 9-2-1518(a), finds that a Dispute Resolution Program exists and that the Medical Review Panel does not have jurisdiction over this claim.

NOW, THEREFORE, IT IS ORDERD, that the Claimant has complied with the requirements of the Wyoming Medical Review Panel Action, W.S. § 9-2-1513 et. seq.; no further action or proceeding shall take place with this claim, and that the Claimant is authorized to immediately pursue the claim in a court of competent jurisdiction. Pursuant to W.S. § 9-2-1518(a), this dismissal constitutes the final decision of the Medical Review Panel, and the tolling of the applicable limitation period shall begin to run again thirty (30) days from the date of this decision.

DATED this 19th day of September, 2017.

Eric A. Easton, Director #5-2176
Medical Review Panel



**EXHIBIT**

2

## CERTIFICATE OF SERVICE

I, Eric A. Easton, do hereby certify that a true and correct copy of the foregoing ORDER OF DISMISSAL was served upon the parties by depositing a true and correct copy in the U.S. mail, postage prepaid this 19th day of September, 2017, to the following:

Diana Rhodes
Rhodes Law Firm
2015 Warren Avenue
Cheyenne, WY 82001

Jerome Reinan
Jordana Griff Gingrass
Law Offices of Jerome Reinan
1437 High Street, Suite 500
Denver, CO 80218

Christopher R. Jones
Gordon & Rees, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202

Eric A. Easton, Director
Medical Review Panel